In re Thomas F. CASEY, Debtor.

**ARTIFICIAL INTELLIGENCE CORP., Steven Sanford, Steven Greenberg & Catherine Casey, Plaintiffs,**

v.

**Thomas F. CASEY, Defendant.**

**Bankruptcy No. 95–03747–B11. Adversary Nos. 95–90451 to 95–90453.**

United States Bankruptcy Court, S.D. California.

July 10, 1996.

Roy L. Carlson, Jr., Milberg & De Phillips, P.C., Cardiff by the Sea, CA, for Debtor.

John W. Cutchin, Duckor Spradling & Metzger, San Diego, CA, for Creditors.

## MEMORANDUM DECISION

PETER W. BOWIE, Bankruptcy Judge.

Artificial Intelligence Corporation, Steven Sanford, Steven Greenberg and Catherine Casey ("plaintiffs") bring this motion to enlarge the time to serve complaints to determine the nondischargeability of certain debts pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 9006(b)(1). The complaints were filed on July 18, 1995, but service was not made until December 15, 1995. The period between filing and service exceeded the time limit for service under the former Federal Rule of Civil Procedure ("FRCP") 4(j), made applicable to all adversary proceedings by Rule 7004, which requires that a complaint be served within 120 days of its filing.[1] By separate order, this Court denied plaintiffs' request to excuse their late service under former FRCP 4(j)'s good cause exception because they did not present facts meeting the good cause standard of that rule. As an alternative method of excusing their late service, plaintiffs now request an enlargement of the time pursuant to Rule 9006(b) to serve their complaints, and assert in support that their failure to serve was the product of excusable neglect.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Mr. Casey filed his chapter 11 petition on April 14, 1995. July 18, 1995, was subsequently set as the deadline to object to the

---

**1.** Rule 7004 controls the service of process, summons and the complaint. Rule 7004(a) provides that FRCP 4(a), (b), (c)(2)(C)(i), (d), (e) and (g)–(j) are applicable in adversary proceedings. Rule 7004(g) goes on to provide that the subdivisions of FRCP 4 made applicable by these Rules shall be those subdivisions in effect on January 1, 1990, notwithstanding any amendment to FRCP 4 subsequent thereto. The Advisory Committee Note (1991) goes on to provide the text of FRCP 4 in effect on January 1, 1990.

dischargeability of certain debts. On July 18, 1995, plaintiffs timely filed the subject complaints, but did not serve them on the debtor. On October 2, 1995, plaintiffs filed a motion to dismiss, convert or appoint a chapter 11 trustee in the debtor's underlying bankruptcy proceeding. On October 30, 1995, a hearing was held on the motion to dismiss. Neither in their papers in support of the motion to dismiss, nor at the hearing did plaintiffs reference the complaints or request an extension of the time to serve the complaints pending a determination of the motion to dismiss. At the conclusion of the hearing, the Court took the matter under submission.

On November 16, 1995, the Court held a hearing on the motions to dismiss the related Audre bankruptcies.[2] The Court denied the motions to dismiss those cases, but did not rule at that time on the motion to dismiss Mr. Casey's individual bankruptcy, which was still under submission. Although plaintiffs point out that this hearing took place on the 120th day after the complaints were filed, none of the parties inquired about an extension of the deadline for service of the subject complaints. It was not until one hundred and fifty (150) days after the filing of the complaints, on December 15, 1995, that an alias summons was issued and the complaints were served on the debtor.

The plaintiffs admit that they intentionally did not immediately serve these complaints. Plaintiffs contend that this decision was justified based on their belief that substantial grounds existed for success on the motion to dismiss the underlying bankruptcy. Dismissal would have rendered these complaints moot. Also, a decision on the motion to dismiss would avoid unnecessary expenditures by both parties.

Although service was initially delayed, plaintiffs maintain that they never intended to allow the entire service period to run without effectuating service, and that they were unaware of the 120 day service requirement. Plaintiffs argue that the hearing on the motion to dismiss occurred well within

the 120 day service period. When no ruling was made on the motion to dismiss Mr. Casey's bankruptcy after the motions to dismiss the Audre and ARSI bankruptcies were denied, the plaintiffs claim that they became concerned that further delay of service of the complaints might not be reasonable. Plaintiffs assert that they believed service within a reasonable time of filing was the only requirement regarding service of the complaints. While investigating the reasonableness of further delaying service, plaintiffs assert that they discovered that Rule 7004 incorporates the 1990 version of FRCP 4(j), requiring service of a complaint within 120 days of its filing, and that this period had already run. Upon discovery of this service requirement and its expiration, plaintiffs submit that they immediately served the complaints on the debtor. Plaintiffs believe that their failure to keep track of these complaints and calendar their service or a hearing on their extension is grounds for excusable neglect.

## DISCUSSION

This case presents two issues. First, may the plaintiffs properly rely on the excusable neglect standard of Rule 9006(b)(1) for enlargement of time to serve when FRCP 4(j) contains its own good cause standard which this Court has already ruled that plaintiffs failed to meet? Second, if plaintiffs may seek enlargement pursuant to Rule 9006, have they presented grounds that warrant enlarging the time for service due to excusable neglect?

■ The debtor claims that the motion to enlarge time is moot because this Court has granted debtor's motions to dismiss. This claim is an attempt to elevate form over substance. Plaintiffs raised the excusable neglect question in the opposition to the motion to dismiss, before the adversary proceedings were dismissed. However, because a request to enlarge time for excusable neglect is procedurally a separate motion, this Court specifically left the excusable neglect determination out of its prior decision.

---

**2.** Prior to these bankruptcies, Mr. Casey was the major shareholder and President of Audre, Inc.

and Audre Recognition Systems, Inc. ("ARSI").

Therefore, debtor's claim of mootness is rejected.

■ Plaintiffs seek to enlarge the time to serve their complaints under Rule 9006(b)(1), which provides:

In General. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.[3]

Plaintiffs assert that they may seek an enlargement of time based on excusable neglect pursuant to Rule 9006(b)(1) despite this Court's finding that they did not meet the good cause exception for failing to comply with former FRCP 4(j). The debtor counters by reasserting that an extension of FRCP 4(j) may only be given for good cause, *U.S. ex rel. DeLoss v. Kenner General Contractors, Inc.*, 764 F.2d 707 (9th Cir.1985), and that counsel's lack of knowledge of the 120 day period was not good cause or excusable neglect for failure to comply with FRCP 4(j). *Townsel v. County of Contra Costa,* 820 F.2d 319, 320 (9th Cir.1987).

The good cause determination under FRCP 4(j) is a separate determination from the excusable neglect standard of Rule 9006(b)(1), and the Advisory Committee Note to Rule 9006(b)(1) suggests that its enlargement provisions are supplementary in nature.

Unless a rule which contains a specific authorization to extend time is listed in paragraph (3) of this subdivision, an extension of the time may be granted under paragraph (1) of the subdivision.

Therefore, according to the Advisory Note, an adverse decision regarding plaintiffs' good cause does not preclude the anomalous circumstance of an enlargement of the time to serve based on excusable neglect pursuant Rule 9006(b)(1). Even though Rule 7004, through former FRCP 4(j), provides a specific test for granting an enlargement, neither rule is listed in Rule 9006(b)(3), which limits enlargement, or in Rule 9006(b)(2), which prohibits enlargement. Therefore, plaintiff is entitled to seek enlargement pursuant to the general provision of Rule 9006(b)(1). *See, Herndon v. De la Cruz (In re De la Cruz),* 176 B.R. 19 (9th Cir. BAP 1994); *In re Williams,* 178 B.R. 255, 258 (Bankr. D.Mont.1995). In this Court's view, the standard for "good cause" under former FRCP 4(j) is more demanding than excusable neglect. The Court would not have been surprised to find it listed in 9006(b)(2) or (3), but it is not. Therefore, it is not excepted from application of 9006(b)(1)'s excusable neglect standard, notwithstanding the seeming incongruity of that result.

This Court recognizes that a recent 5th Circuit case did not apply the excusable neglect standard to FRCP 4(j) because the standard articulated in the Rule is good cause, not excusable neglect. *McGinnis v. Shalala,* 2 F.3d 548, 551 fn. 1 (5th Cir.1993). However, that decision did not elaborate on its rationale for its conclusion or its reasons for not recognizing the supplementary nature of Rule 9006(b)(1). Based on the language of Rule 9006(b)(1) and the accompanying Advisory Committee Notes, Rule 9006(b)(1) is applicable to any rule with a timing element not prohibited or limited in Rule 9006(b)(2) or (b)(3).

■ Having answered the first question affirmatively, the next inquiry is whether the plaintiffs can demonstrate that the reasons for their failure to serve debtor timely constitute excusable neglect. The Supreme Court has recently attempted to clarify the various

---

**3.** Subdivisions (2), and (3) of Rule 9006(b) provide specific limitations on a court's ability to enlarge time. Rule 9006(b)(2) states the court may not enlarge the time for taking action under Rules 1007(d), 1017(b)(3), 2003(a) and (d), 7052, 9023, and 9024. Rule 9006(b)(3) states that the court may enlarge the time for taking action under Rules 1006(b)(2); 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to the extent and under the conditions stated in those rules.

interpretations of excusable neglect employed by circuit courts. *Pioneer Investment Services Company v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer*, the Court announced a balancing test to analyze excusable neglect, stating that the court should view all circumstances, specifically including the following factors: (a) danger of prejudice to debtor, (b) length of delay and potential impact on proceedings, (c) reason for delay, and whether it was in the control of the party and (d) whether the party acted in good faith. *Id.* at 394–95, 113 S.Ct. at 1498. In order to put the test in context, a summary of the facts surrounding the *Pioneer* decision is beneficial.

. In *Pioneer*, an unsecured creditor had failed to file a proof of claim before the claims bar date passed. Upon this discovery, creditor's attorney filed the proof of claim twenty days late, along with a motion to permit the late filing under Rule 9006(b)(1). Movant's attorney claimed that the placement of the claims bar date on the Notice of Meeting of Creditors was ambiguous and justified enlargement due to excusable neglect. The president of the creditor stated that he had asked his attorney if there was a deadline to file claims and the attorney had assured him that none had been set. The bankruptcy court found that movant's attorney was an experienced practitioner and that the attorney could have complied with the bar date. The court found that the attorney's failure to recognize the bar date was not excusable and denied creditor's request to enlarge time under Rule 9006(b)(1), stating that enlargement was only available where the failure to timely perform was due to circumstances beyond the moving party's reasonable control. The district court remanded, directing the bankruptcy court to utilize a more liberal standard in evaluating excusable neglect and suggested that the court consider whether the failure to timely

perform was due to negligence, indifference, or culpable conduct.[4] *Id.* at 384–86, 113 S.Ct. at 1493.

Upon remand, the bankruptcy court again denied movant's request to enlarge time, this time utilizing the factors suggested by the district court. The bankruptcy court focused on whether the failure to file was in the control of movant and whether it was appropriate to penalize the movant for the actions of its attorney. The court found that the reason for the delay, failure to apprehend the bar date, was not outside movant's control and that it would not be improper to penalize movant for the conduct of counsel. This time the district court affirmed.

The court of appeals reversed, however, stating that the bankruptcy and district courts had wrongly penalized movant for its attorney's conduct and that incorporating the bar date into the Notice of Meeting of Creditors created a "dramatic" ambiguity. *In re Pioneer Investment Services Co.*, 943 F.2d 673, 678 (6th Cir.1991). The Sixth Circuit held that the notice could have confused someone not experienced in bankruptcy and found that the record demonstrated excusable neglect. To end the saga, the Supreme Court reversed the Sixth Circuit's conclusion that movant should not be held responsible for the actions of its attorney, but affirmed the conclusion that the record demonstrated excusable neglect.

In affirming the finding of excusable neglect, the Supreme Court embarked on an extensive discussion of the meaning of excusable neglect. The Court began by defining neglect and stating that it encompassed both simple, faultless omissions and, more commonly, omissions caused by negligence. *Id.* at 386–90, 113 S.Ct. at 1494–95. In its analysis of Rule 9006(b)(1) and similarly worded Federal Rules of Civil Procedure, The Supreme Court decided that excusable neglect

---

**4.** The more liberal standard embraced by the district court and later adopted by the Supreme Court in *Pioneer* originates in a Ninth Circuit case. The test as articulated by the Ninth Circuit is as follows: (1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; (4) whether the creditor acted in good faith; and (5) whether clients should be penalized for their counsel's mistake or neglect. *Pioneer*, 507 U.S. at 384–86, 113 S.Ct. at 1493; *quoting In re Dix*, 95 B.R. 134, 138 (9th Cir. BAP 1988).

was meant to encompass more than just situations beyond the moving party's control, and could also include situations involving negligence and carelessness. *Id.* at 394–95, 113 S.Ct. at 1498. The Court concluded that the excusability determination required that a court take all relevant factors into consideration. The majority pointed out that its conclusion differed from that endorsed by the dissent view, which would only look to all surrounding considerations after making a threshold determination that the movant was sufficiently blameless. *Id.* at 395 n. 14, 113 S.Ct. at 1498 n. 14.

The Court used its balancing test to assess movant's attorney's failure to timely file a proof of claim in light of the unusual notice of the claims bar date. The Court found that the ambiguity resulting from the unusual placement of the claims bar date resulted in an inadvertent failure to timely file a creditor's proof of claim under Rule 3003(c). Although the Court believed that counsel was remiss in not apprehending the notice, it held the tardy filing excusable due to the notice's ambiguity. The Court further found that the lack of prejudice to the debtor or to the interests of efficient judicial administration, combined with the good faith of respondents and counsel, weighed heavily in favor of permitting the tardy proof of claim. *Id.* at 396–98, 113 S.Ct. at 1499. The Court stated that it did not find the upheaval in the movant's attorney's law practice a compelling argument in favor of excusable neglect. *Id.* Finally, the Court stated that it could not have found that the bankruptcy court abused its discretion in failing to find excusable neglect if there had been any indication of prejudice to the debtor or judicial administration, or any indication of bad faith.

*Pioneer* adopts the liberal interpretation of excusable neglect, permitting a court to expand deadlines where there is inadvertence, mistake, or carelessness, as well as by circumstances beyond the party's control. *Id.* at 388–90, 113 S.Ct. at 1495. In the present case, plaintiffs' counsel contend that their actions in failing to effectuate timely service satisfy excusable neglect as defined by *Pioneer*. They assert that there was no prejudice to the debtor. The plaintiffs claim that

the debtor's ability to defend has not been impaired in any way, the debtor has lost no evidence, and that debtor had full notice of the filing of the complaints. Plaintiffs also contend that the 30 day delay was minor and does not adversely affect judicial proceedings. While the original delay was intentional, plaintiffs claim that the failure to timely serve was not intentional and that they have acted in good faith.

■ The first *Pioneer* factor is the danger of prejudice to the debtor. The debtor maintains that having to file the motion to dismiss and answer the motion to enlarge time is, in itself, prejudicial. Requiring a debtor to answer and defend an action, by itself, cannot be seen as prejudice to the debtor sufficient to preclude relief based on excusable neglect. Answering and defending are steps the debtor would have to take if the actions had been timely served. Doing so after a delay in service, by itself, does not create prejudice. A second possible ground for prejudice involves the reason that plaintiffs did not serve the complaints. Plaintiffs were, in effect, attempting to hide the complaints to prevent debtor from trying to argue the merits of the state court cases in this forum. However, because the debtor had actual notice of the complaints and could have answered sua sponte, and because the delay would not reduce debtor's time to answer, this Court does not find any prejudice to the debtor.

■ The next factor addressed in *Pioneer* is the length of delay and its potential impact on the proceedings. The debtor asserts that the delay of 30 days represents 25% of plaintiffs' allotted time to serve. Judicial resources have been expended in arguing the motions to dismiss and enlarge time. Again, the acts of bringing these motions in themselves are not prejudicial to the debtor and do not adversely affect judicial proceedings. The delay of 30 days is also not prejudicial where the debtor is still in the early stages of plan formulation. The debtor submits that plaintiffs did not seek an enlargement of time for 60 days after they discovered that they had missed the service deadline. The Court does not understand the reason for such a delay in requesting an extension of time, except to hide the tardiness from the Court.

This may be viewed as prejudicial to judicial administration. Intentionally withholding the service of the complaints is also potentially prejudicial. Time deadlines in the rules are established to encourage an expeditious determination of the amount and status of claims. For instance, Rule 4007(c) specifically requires non-dischargeability claims to be filed within 60 days of the first scheduled date of the § 341(a) meeting. Plaintiffs' intentional delay in serving the complaints after they were filed impeded the judicial interest in a speedy determination of claims.

The third factor utilized in *Pioneer* is the reason for delay, and whether it was in the control of the party. There is no dispute that the plaintiffs had complete control over the service of their complaints. Plaintiffs maintain that they were justified in the delay because they believed that success on the motion to dismiss the underlying bankruptcy was likely. Further, plaintiffs timely filed the motion to dismiss to try and resolve that issue within the 120 day period and they believed it was reasonable to wait for a determination of the motion to dismiss. Plaintiffs also assert that dismissal of the adversary complaints would cause substantial hardship because they would be prevented from litigating the non-dischargeability of these debts.

While they meant to delay service, plaintiffs claim they did not intend to delay service beyond the 120 day period. Plaintiffs state that the motion to dismiss remained under submission beyond the 120 day service deadline and that they were not aware that this deadline was passing. Plaintiffs' counsel asserts that this mistake was caused by their lack of awareness of a specific deadline for service of the complaint. They believed that they were only required to serve debtor within a reasonable time.

■ Plaintiffs' independent filing of a motion to dismiss the underlying bankruptcy within the 120 day period and their belief in the merits of that motion are not bases for excusable neglect in failing to serve the complaints. The merits of plaintiffs' separate motion to dismiss will not be considered in analyzing the failure to act. *In re Van Meter*, 175 B.R. 64 (9th Cir. BAP 1994). Also,

prejudice to the plaintiffs is not one of the four factors listed in *Pioneer*. While such prejudice is a circumstance that the Court may consider, this Court does not believe it should give much weight to the fact that a party's own mistake has prejudiced it.

Plaintiffs also claim that the reason that service was untimely is because of a neglect to diligently research the service requirement and in not taking proper care to calendar the appropriate hearings and keep track of dates. In addition, plaintiffs submit that Rule 7004 itself is ambiguous and a trap for the unwary. The plaintiffs contend that the ambiguity created by the language of Rule 7004 excuses their failure to determine that service was required within 120 days of the filing of the complaints with the Court. Specifically, plaintiffs maintain that Rule 7004 does not generally disclose the 120 day requirement, which is found in the current FRCP 4(m). Plaintiffs contend that a close inspection is required to discover that the 1990 version of FRCP 4(j) is incorporated into Rule 7004. Plaintiffs submit that this ambiguity creates a situation similar to *Pioneer*, and claim that their mistake was reasonable and excusable.

The Court is not persuaded by plaintiffs' argument. Rule 7004 incorporates several subdivisions of the 1990 version of FRCP 4, including 4(j). Rule 7004 is not a trap for anyone who takes the time to read the entirety of the Rule. Subsection (g) of Rule 7004 clearly states that the controlling subdivisions of FRCP 4 are those that are in effect on January 1, 1990, notwithstanding subsequent amendments. Furthermore, most publications containing the Federal Rules of Bankruptcy Procedure reprint the 1990 version of FRCP 4 made applicable under Rule 7004, even the abbreviated or mini-versions. A complete reading of the Rule clearly discloses the 120 day service requirement. Failure of counsel to read this Rule in its entirety does not strike this court as a circumstance of excusable neglect, particularly where counsel are experienced bankruptcy practitioners, as in this case.

■ Ignorance of the law or Federal Rules, or mistakes in their construction, do

not usually constitute excusable neglect. *Pioneer*, 507 U.S. at 390–92, 113 S.Ct. at 1496. The general rule, according to the 9th Circuit, is that a mistake in interpreting and applying the Local and Federal Rules is not excusable neglect. *Kyle v. Campbell Soup Co.*, 28 F.3d 928 (9th Cir.1994); *See also, In re Waggoner*, 157 B.R. 433 (Bankr.E.D.Ark. 1993). *Waggoner* discussed the excusable neglect standard adopted by *Pioneer* and noted that *Pioneer* itself states that a mistake of law usually does not constitute excusable neglect. *Id.* at 436. The court also stated that a conscious informed incorrect decision does not constitute "neglect." *Id.* Numerous other circuit court decisions support the proposition that a mistake in interpreting Rules or statutes does not constitute excusable neglect. *See e.g., United States v. Prairie Pharmacy, Inc.*, 921 F.2d 211, 213 (9th Cir.1990); *Townsel*, 820 F.2d at 320–21 (ignorance of the FRCP 4(j) requirement regarding time of service is not excusable neglect under FRCP 6(b)); *Graham v. Pennsylvania R.R.*, 342 F.2d 914, 915–16 (D.C.Cir. 1964) (lack of awareness of a change in a federal rule is not excusable neglect under FRCP 6(b)). Therefore, plaintiffs' assumption of the success of their motion to dismiss, the possible prejudice to the plaintiff, and the fact that plaintiffs failed to read or misinterpreted Rule 7004 are not reasons that support a claim of excusable neglect.

The final component of the third factor of the *Pioneer* test is the party's control over the delay. The ability to serve these complaints was solely in the power of plaintiffs. Debtor was available and engaged in no attempt to hinder service. Further, this Court notes that plaintiffs had numerous opportunities to seek an extension of the service period or at least address the issue of service. Plaintiffs' complete control over the timing of service does not favor excusable neglect.

The final factor specified by *Pioneer* is the good faith of the moving party. The plaintiffs believe that they have acted in good faith throughout the proceedings and have sought expeditious resolution of all issues in a diligent manner. The debtor contends that plaintiffs made no attempt to serve within the 120 day period, and they did not bring this motion immediately upon discovery that the service period had lapsed. Debtor also claims that plaintiffs were less than candid with the Court in explaining their purported ignorance of Rule 7004 when opposing the motion to dismiss. Debtor claims that the plaintiffs certainly did not do all they could to timely serve the complaints.

The Supreme Court's interpretation of excusable neglect does not require that a party do all that it can to comply with a time requirement. The language of *Pioneer* suggests that careless and negligent omissions may constitute excusable neglect. However, this Court is not convinced that plaintiffs have acted in good faith in this case. In no prior pleadings, including the ex parte motion to shorten time on notice of the motion to extend, did the plaintiffs' counsel assert that an ignorance of Rule 7004 caused their failure to comply with the 120 day service deadline. Plaintiffs' opposition to the motion to dismiss these complaints included plaintiffs' argument that the time to serve should be enlarged based on excusable neglect. However, no reference is made to an ignorance of the 120 day service period. The plaintiffs now claim for the first time that their failure to timely serve was based on an ignorance and a misreading of Rule 7004.

Even after discovering that the 120 day period had run, plaintiffs did not bring a motion to enlarge for almost 60 days. This motion should have been brought immediately. The failure to acknowledge their noncompliance with Rule 7004 raises questions regarding the good faith of their tactics.

Finally, plaintiffs have acknowledged that they intentionally did not serve the complaints on the debtor in an attempt to prevent debtor from arguing in opposition to the motion to dismiss the bankruptcy that plaintiffs had put the state court matters at issue in this forum by the adversary proceedings. While this is a tactical decision, it is seriously questionable whether withholding service of complaints on the debtor for that reason is indicative of good faith. This Court does not find that plaintiffs have engaged in any affirmative good faith that favors a finding of excusable neglect. This is not to say that the Court believes that plaintiffs or their attor-

neys' have been acting in bad faith. However, where the Court is asked to make an equitable determination to excuse a party from a failure to comply with its rules, that party should bear the burden of showing some good faith effort to comply. For instance, a party's attempted but flawed service is indicative of good faith. *Williams*, 178 B.R. at 259. Also, an immediate request for an extension of time accompanying a late filing is evidence of good faith. *Pioneer*, 507 U.S. at 382–84, 113 S.Ct. at 1492. In this case, there is no such indication of plaintiffs' good faith.

The factors of *Pioneer* do not weigh in favor of finding excusable neglect in light of the facts in this case. As in *Pioneer*, there appears to be little actual, if any, prejudice to the debtor or judicial administration. This factor, considered alone, would favor a finding of excusable neglect. However, the service of the complaint was in the complete control of the movants, the reasons for the delay do not justify excusable neglect, and this Court is not convinced that creditors have proceeded in good faith.

In *Pioneer*, the Supreme Court found that movant's efforts to file a proof of claim in a timely manner was at least somewhat hampered by the ambiguity of the placement of the notice of the bar date. Thus, though the Supreme Court states that the failure to act in a timely matter does not need to be beyond a party's control under Rule 9006(b)(1), the fact that the party is not wholly to blame is a factor that may shift the equities in its favor. This element is not present in this case, where the plaintiffs had absolute power to serve their complaints and the failure to do so was not at all facilitated by any outside force.

It is also important to note that the Supreme Court did not attribute much significance to the upheaval in the law practice of movant's attorney in assessing his culpability. Rather, the significant factor was the ambiguity of the bar date. Thus, while the Court stated that negligence may give rise to excusable neglect, it focused on the carelessness or mistake caused by an ambiguity in a notice that was not caused by the movant.

The Court in *Pioneer* also found that the moving party had acted in good faith. The movant had requested an enlargement at the time the late filed claim was submitted. In the present case, creditors did not request an enlargement contemporaneously with the serving of their complaints on debtor. Rather, they served the complaints late and waited for the debtor to bring motions to dismiss. In their opposition to the motions to dismiss, the plaintiffs stated that they did not neglect to serve the complaints, but that they believed that they had good reason not to serve the complaints until the determination of the motion to dismiss the underlying bankruptcy. Later, plaintiffs stated that, while they purposefully did not immediately serve the complaints, they did not intend to let the entire time period run. Plaintiffs then filed the motion to enlarge time well after they discovered they had missed the service deadline. In these pleadings, plaintiffs first asserted an unawareness of the 120 day service requirement and that Rule 7004 is ambiguous.

While focusing on four specific factors, the Supreme Court in *Pioneer* states that the excusable neglect determination is, at bottom, an equitable one. *Pioneer*, 507 U.S. at 394–98, 113 S.Ct. at 1498. It requires an equitable determination of all relevant factors. *Id.* at 381–82, 113 S.Ct. at 1491. The *Pioneer* construction of Rule 9006(b)(1) unquestionably gives courts a wide latitude to find excusable neglect. It allows the court to forgive, where appropriate, late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control. *Id.* at 388–90, 113 S.Ct. at 1495.

*Pioneer* announced a balancing test which, if focused on restrictively, would seem to center on the consequences of the act or omission, instead of the conduct of the actor. But it is important to keep in the forefront the express language of Rule 9006(b)(1) applicable here. That Rule provides that the court in its discretion may permit an "act to be done where the failure to act was the result of excusable neglect." The Rule thus focuses on the actor's conduct, as indeed the Supreme Court did in *Pioneer* when it found excusable neglect because of the ambiguity in

 

the notice. The attorney's failure to act (timely file a claim) was the result of excusable neglect because the notice which should have caused him to act was itself ambiguous. When *Pioneer* is understood on its facts and considered alongside the express language of Rule 9006(b), *Pioneer*'s balancing test is a useful tool for courts confronted by failures to timely and properly act as required by the rules.

### CONCLUSION

After applying the factors of *Pioneer* to the facts of this case, an enlargement of time is not justified. Based on all the circumstances, the plaintiffs' conduct does not constitute excusable neglect under Rule 9006(b)(1). Plaintiffs made an intentional, tactical decision not to comply with a FRCP deadline. Plaintiffs made no effort to serve, notwithstanding a continuing ability to do so. A conscious disregard for the service requirement does not qualify as excusable neglect, even under *Pioneer*'s liberal standard. The plaintiffs never made any attempt to extend the deadline to serve or even address the question. During the hearing on this matter, plaintiff's counsel admitted that this may have been the first time he had filed a complaint and not immediately served it. In such a situation, the attorney should have taken extra steps to ensure that he was proceeding properly. Nowhere in their previous papers did plaintiffs admit to any neglect, inadvertence, mistake, or negligence in their failure to serve the complaint within the 120 day time period. Neither did plaintiffs allude to their belief that Rule 7004 was ambiguous. Rather, plaintiffs actively tried to distinguish several cases that dealt with inadvertent improper service. Further, plaintiffs' claim that they assumed they would prevail on their dismissal motions is irrelevant. Plaintiffs made a tactical decision that was not the result of neglect. Their failure to properly interpret Rule 7004 is a mistake of law that is not grounds for excusable neglect. While this result may adversely affect the plaintiffs, they are accountable for the acts of their attorneys. *Pioneer* 507 U.S. at 396–98, 113 S.Ct. at 1499. Therefore, plaintiffs' request to enlarge the time to serve the complaints pursuant to Rule 9006(b)(1) is denied.

IT IS SO ORDERED.